# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

ABERCROMBIE & FITCH CO.,

    Plaintiff,

v.

    Civil Action No. 2:11-cv-1114
    Judge George C. Smith
    Magistrate Judge Elizabeth P. Deavers

ACE EUROPEAN GROUP, LIMITED,

    Defendant.

## OPINION AND ORDER

Plaintiff, Abercrombie & Fitch Company ("Abercrombie"), brings this insurance coverage dispute against Defendant, Ace European Group, Limited ("Ace"). This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, the federal statute governing diversity jurisdiction. This matter is before the Court for consideration of Ace's Motion to Transfer Venue (ECF No. 2), Abercrombie's Memorandum in Opposition (ECF No. 10), Abercrombie's Reply (ECF No. 17), Ace's Supplement (ECF No. 27), Abercrombie's Response to Ace's Supplement (ECF No. 30), Ace's Second Supplement (ECF No. 35), Abercrombie's Motion to Strike (ECF No. 21), and Ace's Response to Abercrombie's Motion to Strike (ECF No. 24). Ace seeks a Court order transferring this matter to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). Abercrombie opposes transfer. For the reasons that follow, Abercrombie's Motion to Strike and Ace's Motion to Transfer Venue are **DENIED**.

**I.**

This diversity action arises out of an insurance coverage dispute between Ace and Abercrombie. Abercrombie is Delaware corporation with its principal place of business in New Albany, Ohio. ACE is a foreign company domiciled in the United Kingdom and registered to sell surplus lines insurance policies in Ohio. In exchange for premiums, Ace issued Abercrombie the Safeonline Advertisers and Internet Liability Policy ("Policy"). Hollister Co. ("Hollister") is a company affiliated with Abercrombie and is a named insured under the Policy.

In 2009, Abercrombie conducted a nationwide Christmas gift card promotion, offering a twenty-five dollar gift card to consumers who purchased a designated amount of merchandise. According to Abercrombie, the promotional gift cards expired and had their balance voided out on January 30, 2010. Some of the gift cards issued in connection with the promotion, however, had the words "no expiration date" while others had no printed information regarding an expiration. (Compl. ¶ 11, ECF No. 4.)

In the summer of 2010, consumers brought two class-action complaints against Abercrombie arising from their inability to utilize the promotional gift cards after January 30, 2010. The first-filed lawsuit, styled *GS Tiffany Boundas and Dorothy Stojka v. Abercrombie*, Case Number 10-cv-4866 ("Boundas Action"), was filed in a state court in Illinois on June 8, 2010, which was subsequently removed to the Northern District of Illinois, where it is currently pending. On March 7, 2012, the Northern District of Illinois issued an order certifying a nationwide class in the Boundas Lawsuit. The second-filed lawsuit, styled *Kerry White v. Abercrombie & Fitch, Hollister, and The Limited*, Case Number BC 444368 ("White Action"), was filed in the Superior Court of the State of California for the County of Los Angeles Central

District. The plaintiffs voluntarily dismissed Abercrombie and The Limited from the complaint such that these plaintiffs are proceeding solely against Hollister.

Abercrombie sought coverage from ACE under the Policy for the Boundas and White Actions. Based upon its review of the allegations set forth in the Boundas and White complaints, Ace denied coverage on several grounds, citing the applicability of at least six of the Policy's enumerated exclusions. (*See* Coverage Correspondence, ECF Nos. 4-4 and 4-5.) Because Abercrombie and Ace were unable to resolve the coverage dispute, they were required under the terms of the Policy to submit to a non-binding, mini-trial proceeding and to wait until thirty days after the conclusion of the proceeding to file suit. Ace and Abercrombie submitted to the requisite mini-trial process, which concluded on October 27, 2011, but did not resolve their dispute. Thus, per the Policy, the parties could not file suit until November 28, 2011.

And the race began. On November 28, 2011, at 12:08 a.m. EST, Abercrombie filed suit against ACE in the Court of Common Pleas for Franklin County, Ohio. ACE subsequently removed the action to this Court. Abercrombie seeks declaratory relief regarding the terms of the policy and asserts state-law breach of contract and bad faith claims arising out of ACE's denial of coverage for the Boundas and White Actions. Five hours and forty-one minutes later, at 6:49 a.m. CST, ACE filed suit against Abercrombie in the United States District Court for the Northern District of Illinois, seeking only declaratory relief.

ACE asks the Court to transfer this action under 28 U.S.C. § 1404(a) to the Northern District of Illinois, where the Boundas class action is pending. In support of its Motion, Ace asserts that the balance of the public and private factors set forth in § 1404(a) heavily weigh in favor of transfer. Abercrombie opposes Ace's Motion to Transfer Venue, asserting that the

Court should apply the first-to-file rule and retain jurisdiction over this case. Abercrombie further posits that Ace's Motion should be denied because the balance of the private and public interest factors weigh against transfer.

## II.

### A. Abercrombie's Motion to Strike

As a threshold matter, the Court considers Abercrombie's Motion to Strike. (ECF No. 21.) Abercrombie moves to strike "immaterial, incorrect, and/or misleading portions" of Ace's Reply in Support of its Motion to Transfer. (Pl.'s Mot. to Strike 1, ECF No. 1.) Ace opposes Abercrombie's Motion, asserting that the Motion is "a thinly-disguised Sur-reply which adds nothing to this Court's consideration of the issues before it." (Def.'s Mem. in Opp. 6, ECF No. 24.)

The Court agrees that Abercrombie's Motion to Strike is simply a disguised attempt at filing a sur-reply without obtaining leave of court pursuant to Local Civil Rule 7.2(a). This Court is well-equipped to evaluate the materiality of Ace's arguments and whether or not it mischaracterizes the facts or Abercrombie's assertions. *See Bishop v. Children's Center for Developmental Enrichment*, No. 2:08-cv-766, 2011 WL 5506105, at *2 (S.D. Ohio Nov. 10, 2011) (denying the plaintiff's request to file a sur-reply, explaining that "[t]his Court is in the business of determining whether the litigants before it appropriately relate the facts, the other parties' arguments, and the propositions that are set forth in case law or whether the litigants mischaracterize those facts, arguments, and propositions"). Abercrombie's request is, therefore, not well taken, and its Motion to Strike is **DENIED**.

B.  **Applicability of the First-to-File Rule**

   Abercrombie asserts that the Court should apply the first-to-file rule and deny Ace's Motion to Transfer. In support of this assertion, Abercrombie posits that the rule clearly applies as there is substantial overlap as between the parties and issues and no factors weigh against its enforcement. Abercrombie complains that "ACE completely ignores the question of who filed first and instead requests transfer of this first-filed case to the Northern District of Illinois under the doctrine of *forum non conveniens*." (Pl.'s Mem. in Opp. 10, ECF No. 10.) Ace counters that the rule should not be applied under the circumstances presented here. Namely, Ace points out that the parties had an agreement not to file until a date certain and Abercrombie's filing on November 28, 2011, at 12:08 a.m. EST, was made while it was still November 27, 2011, in the Central Time Zone where ACE's counsel reside.

   "The first-to-file rule . . . is a 'well-established doctrine that encourages comity among federal courts of equal rank.'" *Certified Restoration Dry Cleaning Net., L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007) (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 791 n.8 (6th Cir. 2004) (citation omitted)). Under the first-to-file rule, where two actions involve nearly identical parties and issues are filed in different district courts, "the court in which the first suit was filed should generally proceed to judgment." *Zide Sport Shop of Ohio v. Ed. Tobergate Assoc., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001). The rule, however, must not be strictly applied:

> [T]he first-filed rule is not a strict rule and much more often than not gives way in the context of a coercive action filed subsequent to a declaratory judgment. . . . District courts have the discretion to dispense with the first-to-file rule where equity so demands. A plaintiff, even one who files first, does not have a right to bring a declaratory judgment action in the forum of his choosing. Factors that weigh against enforcement of the first-to-file rule include extraordinary circumstances, inequitable

conduct, bad faith, anticipatory suits, and forum shopping.

*Certified Restoration*, 511 F.3d at 551–52 (internal quotation marks and citations omitted). Under the circumstances presented here, the Court cannot conclude that the first-filed rule necessarily warrants that the case stay venued in this District. The parties agreed that litigation could not be initiated until November 28, 2011. Both parties filed their complaints less than six hours apart, even before the respective courthouses opened their doors. Under these circumstances, the Court concludes that it would be inequitable to apply a hard-and-fast rule rewarding one party for winning the race to the courthouse.

Regardless of any such finding, the Court must still determine whether transfer of venue is proper under 28 U.S.C. § 1404(a). *See Zimmer Enterprises, Inc. v. Atlandia Imports, Inc.,* 478 F.Supp.2d 983, 989 (S.D. Ohio 2007) ("The first-filed rule does not supersede the inquiry into the balance of convenience under § 1404(a) and a transfer justified under § 1404(a) may be proper even if the action to be transferred was filed before a related action was filed in the transferee district." (internal quotation marks and citations omitted)). As the *Zimmerman* court explains:

> The first-to-file rule . . . allows a district court to transfer, stay, or dismiss an action when a similar complaint has already been filed in another federal court. Recently, however, courts have begun to confuse the first-to-file rule with transfer of venue analysis. They are, however, separate questions, the analysis of which are conducted separately. Therefore, a determination that the Ohio action was the first-filed and that none of the exceptions to the first-to-file rule exist, does not preclude the Court from determining that transfer of venue is proper under 28 U.S.C. § 1404(a).

*Id.* (internal quotation marks and citations omitted). *See also Cincinnati Ins. Co. v. O'Leary Paint Co., Inc.,* 676 F.Supp.2d 623, 630 (W.D. Mich. 2009) ("The fact that Cincy brought suit in this court before O'Leary brought suit in Indiana does not bring the 'first-to-file rule' into play

6

as part of the transfer-of-venue analysis. Even aside from the fact that this action commenced a mere six weeks before the Indiana action, the first-to-file rule and transfer of venue are separate questions, the analysis of which are conducted separately." (internal quotation marks and citation omitted)); *Carson Real Estate Co. v. CoStar Group Inc.*, No. 10-cv-13966, 2011 WL 4360021, at *7 (E.D. Mich. June 30, 2011) ("Transfer of venue and the first-to-file rule are separate issues which must be analyzed separately."); *Devorris v. Cummings Inc.*, No. 3:2006-183, 2007 WL 1875816, at *7 (W.D. Pa. June 27, 2007) ("It is worthy to note that even if the first-filed rule were applicable to this case, Cummings' Motion to Transfer would not necessarily be defeated. While the first-filed rule can be considered as one factor in the more general transfer analysis under § 1404(a), a finding that the first-filed rule is applicable does not preclude a transfer to the forum where the second action was filed. The inquiries are separate and distinct, and the former does not control the latter.") Thus, contrary to Abercrombie's assertions, a determination that it was the first to file is not outcome determinative with respect to Ace's § 1404(a) Motion. Instead, this Court must proceed to consider the merits of Ace's Motion regardless of whether this action was the first-, second-, or only-filed action.

**C.      Ace's Motion to Transfer to a More Convenient Forum**

    **1.      28 U.S.C. § 1404(a)**

Section 1404(a) provides as follows: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). Thus, the threshold consideration is whether the action could have been brought in the transferee court. *Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 849 (S.D. Ohio 2007). If so, "the issue becomes whether

transfer is justified under the balance of the language of § 1404." *Id*.

"The moving party bears the burden of showing the need to transfer venue." *Slate Rock Const. Co. Ltd. v. Admiral Ins. Co.*, 2:10-CV-1031, 2011 WL 3841691, at *5 (S.D. Ohio Aug. 30, 2011) (citing *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp.2d 941, 945 (S.D. Ohio 2002)). The moving party must demonstrate that the proposed transferee court is "a *more* convenient forum, not [simply] a forum likely to prove equally convenient or inconvenient." *Van Dusen v. Barrack*, 376 U.S. 612, 645–46 (1964); *see also Shanechain v. Macy's, Inc.*, 251 F.R.D. 287, 292 (S.D. Ohio 2008) ("[Section] 1404 does not allow . . . for transfer if that transfer would only shift the inconvenience from one party to another.").

A district court deciding a § 1404(a) motion "has broad discretion to grant or deny" the requested transfer. *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994). Courts generally consider a variety of private and public factors when considering a motion to transfer to a more convenient forum. *See Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 n.1 (6th Cir. 2006). The Court considers the following interests of the litigants:

> "[P]laintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses–but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)."

*Slate Rock Construction*, 2011 WL 3841691 (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995)). The Court also considers the following interests of the public:

> "[T]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases."

8

*Id*.

### 2. Motion to Transfer Analysis

Abercrombie does not dispute that the Northern District of Illinois is a proper venue for this action. Thus, the Court must consider and weigh the various private and public factors. For the reasons set forth below, the Court concludes that the balance of the relevant factors weigh against transfer.

#### i. Private Factors

Abercrombie's choice to litigate in its home state of Ohio is generally entitled to substantial deference. *See Jamhour*, 211 F.Supp.2d at 946–47 (quoting *Hanning v. New England Mut. Life Ins. Co.*, 710 F.Supp. 213, 214 (S.D. Ohio 1989) ("'The plaintiff's choice of forum is to be given considerable weight . . . .'"); *Nicol v. Koscinski*, 188 F.2d 537 (6th Cir. 1951) ("[U]nless the balance [of the factors] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."). "A plaintiff's choice of forum, however, is entitled to somewhat less weight when the case is removed to federal court because the plaintiff is no longer in his or her chosen forum, which was state court." *Jamhour*, 211 F. Supp. 2d at 947; *Sky Tech. Ptrs., LLC v. Midwest Research Inst.*, 125 F. Supp. 2d 286, 292 (S.D. Ohio 2000) (same); *Neff Athletic Lettering Co. v. Walters*, 524 F. Supp. 268, 271 (S.D. Ohio 1981) (same). Because Abercrombie originally filed in state court, the Court accords its choice of an Ohio forum significant weight, but not the substantial deference it might otherwise receive.

The locus of operative facts in this case weighs against transfer. Upon reviewing the complaints filed in the Boundas and White Actions, Ace denied coverage and refused to defend and indemnify Abercrombie, relying on more than six of the Policy's provisions. Abercrombie

disputes Ace's interpretation of the Policy, and this action requires this Court to resolve that dispute. Thus, the facts giving rise to this insurance coverage dispute, which involves the interpretation of the Policy, occurred primarily in Ohio, where the Policy was negotiated and executed and where Abercrombie filed its insurance claim. *See, e.g.*, *Cent. States, SE & SW Areas Health & Welfare Fund v. Guarantee Trust Life Ins. Co.*, 8 F.Supp.2d 1008, 1011 (N.D. Ohio 1998) (finding that the location were the defendant denied the coverage is the locus of the controversy); *St. Paul Fire & Marine Ins. Co. v. Brother Int'l Corp.*, No. 05 C 5484, 2006 WL 1543275, at *3 (N.D. Ill. June 1, 2006) (gathering cases concluding that the locus of operative facts in an insurance coverage dispute is not where the underlying accident or litigation is proceeding, but instead where the contract was negotiated given that the pivotal issue is the interpretation of the insurance policy); *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co*., 419 F. Supp. 395, 405 (S.D.N.Y. 2005) (noting that the court considers "where the insurance contract was made" in making a determination of "the locus of operative facts in a declaratory judgment action concerning the interpretation of an insurance policy contract"); *see also Travelers Prop. Cas. Co. v. Hillerich & Bradsby, Co., Inc.*, No. 05-71497, 2005 WL 2206161, at *3 (E.D. Mich. Sept. 12, 2005) (transferring insurance coverage dispute action out of the district where the underlying litigation arose to the district where the policies were negotiated, purchased, and issued, explaining that the events in the underlying litigation are contained in the record, which merely required a paper review and that it was not clear whether testimony of the parties in the underlying litigation would be relevant to the coverage issue).

The cases upon which Ace relies to argue that the locus of the operative facts is in Illinois, where the underlying litigation is pending, including *Jamhour v. Scottsdale Ins. Co.*, 211

F. Supp. 2d 941, 945 (S.D. Ohio 2002), and *Federal Insurance Company v. CVS Revco D.S., Inc.*, 1:05 CV 1767, 2009 WL 1707898, at *5 (N.D. Ohio June 16, 2009), are distinguishable. In these cases, in contrast to the instant action, the primary issue was not one of policy interpretation.

In *Jamhour*, an Ohio plaintiff brought suit against an insurer in Ohio for failing to fully pay his claims arising out of a fire and alleged theft at a Louisiana café. 211 F. Supp. 2d at 944. The insurer moved to transfer the action to a district court in Louisiana pursuant to § 1404(a). *Id*. Unlike in the instant action, which primarily involves interpretation of the Policy, the *Jamhour* parties did not dispute whether the policy language covered claims for theft or fire. *Id*. at 944–48. Instead, the insurer had declined to pay the plaintiff the full amount he requested for the fire and alleged theft because he had failed to provide documentation of additional damage caused by the fire and because he had failed to produce any evidence that there was a theft. *Id*. at 943–44. The "main issues to be decided" included the identification of the Louisiana café's equipment and its condition, the extent of any damage to the equipment in the fire, and whether a theft actually occurred. *Id*. at 948. Contrary to Ace's characterization of the facts, it was not simply that the underlying claims arose in Louisiana that prompted the *Jamhour* court to transfer the case there. Instead, it was that resolution of the main issues in the case involved primarily Louisiana witnesses and that ease of access to proof favored Louisiana, among other factors.

Similarly, in *Federal Insurance Company*, the dispute was not one of policy of interpretation. 2009 WL 1707898 at *1. Rather, the remaining issue was whether the insurer had a duty to indemnify the insured for loss related to a class action. *Id*. Resolution of this issue turned on whether or not the losses claimed were the result of the insured's intentional or

reckless conduct. *Id*. at *4. This factual issue was also being resolved in the proposed transferee district, where the underlying class action was pending. *Id*. at *4–5. Given the complexity of the class action that had been pending nearly six years and the overlap in the issues to be resolved, the court agreed transfer was appropriate. *Id*. at 4–6.

In this case, in contrast to *Jamhour* and *Federal Insurance Company*, the primary dispute is one of policy interpretation. For example, in denying Abercrombie's claims, Ace asserts that the claims do not fall within the Policy's scope of coverage, explaining as follows:

> [T]he only portion of the [Policy] potentially implicated, if at all, is for **claims** for "liability arising out of your negligence in respect of any **Internet** and **media communication content**," which does not include liability associated with content communicated through "the sleeve of the gift card" or "in-store marketing."

(White Coverage Corres. 4, ECF No. 4-5.) (*See also* Boundas Coverage Corres. 3, ECF No. 4-4 (noting that the Boundas Action "does not allege negligence regarding **Internet** and **Media communication** but rather breach of contract and intentional act claims").) Ace also asserts that the Boundas and White Actions do not fall within the Policy's scope of coverage because the Actions seek "damages, loss and/or relief that do not qualify as within the scope of coverage for damages arising from a covered **claim**, as defined in the Policy." (Boundas Coverage Corres. 3, ECF No. 4-4.); (*See also* White Coverage Corres. 3, ECF No. 4-5 (same).) Ace then asserts that even if the Actions did allege claims within the Policy's ambit, a number of exclusions preclude coverage. (Boundas Coverage Corres. 4, ECF No. 4-4 (listing six potentially-applicable exclusions; White Coverage Corres. 4–5, ECF No. 4-5 (same).) For example, Ace submits that Exclusion (o) bars coverage because the promotional gift cards amounted to "coupons, price discounts, prizes, awards, or any other valuable consideration given in excess of the total contracted or expected amount," all of which are barred by the provision. (Boundas Coverage

Corres. 4, ECF No. 4-4; White Coverage Corres. 4, ECF No. 4-5.) Ace also denies coverage on a number of other grounds, including that the claims asserted in the Boundas and White Actions arise out of or are attributable to alleged breaches of contract and are, therefore, barred under Exclusion (h) of the Policy.

The convenience to the parties weighs against transfer. Ohio is presumably convenient to Abercrombie given that its principal place of business is here and that it filed the action here. Ace, a foreign company, has no ties to Illinois other than its counsel, which is accorded little or no weight. *See Tri-Con, Inc. v. Volvo Trucks N. Am.*, No. 5:05-cv-184, 2006 WL 1752411, at *4 (W.D. Mich. June 23, 2006) ("[T]he convenience and availability of counsel are given little weight in a change of venue motion.").

The convenience to the witnesses is a neutral factor or weighs slightly against transfer. Because the primary dispute is one of policy interpretation, to the extent witnesses are required to resolve the dispute, Abercrombie's witnesses will likely reside in Ohio. Ace's witnesses likely reside in the United Kingdom given the likelihood that witnesses relating to the negotiating and underwriting of the Policy and the adjusters handling the claims will be located at the parties' headquarters. The convenience of non-party witnesses, however, "is more important than the convenience of party witnesses on either side." *Cincinnati Ins. Co.,* 676 F. Supp. 2d at 635. In its Motion to Transfer Venue, Ace does not identify any non-party witnesses that it intends to call, noting only that "[w]itnesses related to the underlying Boundas case are located in Illinois." (Def.'s Mot. 8, ECF No. 2-1.) Then, it its Reply, Ace asserts generally that the "testimony of the employees and former employees at the Illinois and California stores are integral to this case" and that it "has every right to seek discovery of store managers, assistant

13

managers, employees and former employees, particularly those who were or may have been involved in communications with plaintiffs in underlying cases." (Def.'s Reply 7–8, ECF No. 17.) Ace, as a moving party, must do more than simply state that it has a right to seek discovery of non-party witnesses who do not reside in Ohio. *Slate Rock Const.*, 2011 WL 3841691 at *9 (citation omitted) ("[A] generalized assertion by a defendant that witnesses reside in . . . the proposed transferee district is generally insufficient to support a change of venue.") Rather, the moving party "must show . . . that witnesses (usually third-party witnesses rather than employees of the defendants) are unwilling to attend a trial in that forum. *Id.* (citations omitted); *see also Pearle Vision, Inc. v. N.J. Eyes, Inc.*, No. 1:08-CV-190, 2009 WL 73727, at *9 (S.D. Ohio Jan. 6, 2009) (noting, in conducting a § 1404(a) analysis, that the defendants "have [not] offered any evidence that their witnesses would be unable or unwilling to provide testimony at a trial in this district"); *Armco, Inc. v. Reliance Nat. Ins. Co.*, No. C-1-96-1149, 1997 WL 311474, at *5 (S.D. Ohio May 30, 1997) ("[T]he Defendant has not indicated that witnesses would be unwilling to attend and offer testimony. . . . [T]he Defendant must submit evidence indicating that their witnesses have refused to attend trial in the Southern District."); *Shore to Shore Prop., LLC v. Allied World Ass.*, No. C 11-01512, 2011 WL 4344177, at *3 (N.D. Cal. Sept. 15, 2011) (internal quotation marks and citation omitted) (noting that the party seeking a convenience transfer "is obligated to identify the key witnesses to be called and to present a generalized statement of what their testimony would include"); *cf. Jamhour*, 211 F. Supp. 2d at 947 (specifically identifying witnesses and their expected testimony, enabling the court to weigh the significance

of the location of each witness). Ace has made no such showing.[1] The Court declines to accord weight to the convenience of unidentified non-party witnesses Ace *may* call who *may or may not* reside in Illinois and whose testimony is of unknown relevance to whether Ace has a duty under the Policy to defend or indemnify Abercrombie with respect to the Boundas and White Actions.

         ii.        **Public Factors**

Ohio has a greater interest than Illinois in resolving this insurance coverage dispute. This dispute requires the Court to apply Ohio law to interpret the Policy, which was negotiated and executed in Ohio and issued to an Ohio company. *See Nat'l Guardian Risk Ret. Gr., Inc. v. Cent. Ill. Emerg. Phys., LLP*, No. 1:06CV247, 2006 WL 1892529, at *5 (W.D. Mich. July 10, 2006) ("Defendants, once again, place too much reliance on the underlying action. While the Illinois pubic has an interest in [the underlying action] occurring in that state, it has little interest in an insurance coverage dispute involving a Michigan partnership and insurance policy. . . . As such, the public interest in Illinois is not very significant and this factor weighs against transfer."); *Washington Nat. Life Ins. Co. v. Calcasieu Parish Sch. Bd.*, No. 05 C 2551, 2006 WL 1215413, at *13 (N.D. Ill. May 2, 2006) ("Louisiana has a much stronger interest in the resolution of issues relating to the insurance of its [residents], particularly where that insurance was solicited and negotiated within its boundaries.").

---

[1] Even if Ace had made such a showing, the Court notes that it could utilize the compulsory process of the Northern District of Illinios to obtain deposition testimony which it could use at trial in Ohio. *See Projects Unlimited, Inc. v. All Tech Elecs., Inc.*, No. 3:09-cv-284, 2010 WL 299156, at *8 (S.D. Ohio Jan. 21, 2010) ("While [the defendant] asserts compulsory process available to obtain witness testimony only in New York, the same compulsory process can be used to obtain deposition testimony from those witnesses in New York which can be used at trial in Ohio.").

15

The applicability of Ohio law to this coverage dispute weighs only slightly against transfer. Certainly, this Court is more familiar with Ohio law. The parties have provided no indication, however, that the applicable law is so unique that the Northern District of Illinois would not be as capable as this Court of applying that law. *See Midwest Motor Supply v. Kimball*, 761 F. Supp. 1316, 1319 (S.D. Ohio 1991) (familiarity with applicable law does not "strongly militate" for transfer unless law to be applied is "novel or complex"); *ITS Financial, LLC v. Advent Financial Services, LLC*, No. 3:10CV0041, 2010 WL 3603907, at *4 (S.D. Ohio Aug. 23, 2010) (Report and Recommendation, adopted Sept. 13, 2010) (same).

Finally, although the conservation of judicial resources slightly favors transfer, this factor does not overcome the other factors weighing against transfer. As Ace points out, the Boundas Action has been pending since July 2010. Since that time, the Northern District of Illinois has presided over multiple motions and certified a national class. As a result, the Northern District of Illinois has undoubtedly become intimately familiar with the nature of the claims advanced in the Boundas Action. In resolving the insurance coverage dispute in the instant case, this Court, too, will have to become familiar with the nature of the claims advanced in the Boundas and White Actions. Thus, in retaining this action, there will be some duplication of efforts.

Ace, however, overstates the risk of duplication of efforts. Contrary to Ace's assertions, the issues of *res judicata* present in *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807 (6th Cir. 2004), are not present here. In *Bituminous*, the issue before the federal district court was "whether Shields was an employee of J & L's at the time of his injury and, therefore, excluded from coverage under the terms of J & L's commercial insurance policies with Bituminous." 373 F.3d at 809. Whether Shields was a J & L employee was also a paramount

16

issue in the related, ongoing, underlying state-court tort and works' compensation cases:

> The controversy in this [federal] case is one of insurance coverage. Bituminous seeks a declaration that it has no duty to defend or indemnify J & L based on exclusions in its insurance policies for employees. If Shields was an employee of J & L at the time of his injury, Bituminous would have no duty to defend or indemnify J & L in the state court personal injury action. If Shields was not an employee, on the other hand, Bituminous would be obligated under its contracts to defend and indemnify J & L. Thus, resolution of the controversy hinges solely on whether Shields was an employee of J & L at the time of his injury, a fact-based, and in this case very close, question of state law.
>
> When this declaratory judgment action was filed, however, Shields' employment status was already being considered in two independent state court proceedings: the state tort action between Shields and J & L, and Shields' action before the Kentucky Department of Workers' Claims.

*Id*. at 813. Ultimately, the United States Court of Appeals for the Sixth Circuit held that the district court should have declined to exercise jurisdiction over the insurance declaratory judgment action, in part, to avoid friction between the federal and state courts and the possibility of inconsistent rulings on the pivotal issue of whether Shields was an employee. *Id*. at 815–16. The Sixth Circuit remanded the case to the district court "with instructions to dismiss the complaint." *Id*. at 817. Here, in contrast to *Bituminous,* the central issues presented by this insurance coverage action are not the same issues before the Boundas and White Courts. For example, the Boundas and White Actions will not be addressing whether or not the Policy covers liability associated with content communicated through the sleeve of a gift card or whether the promotional gift cards amounted to "coupons, price discounts, prizes, awards, or any other valuable consideration given in excess of the total contracted or expected amount," all of which Ace asserts are excluded under the Policy. (*See* Boundas Coverage Corres. 4, ECF No. 4-4; White Coverage Corres. 4, ECF No. 4-5.) Contrary to Ace's assertions, there appears to be little danger of *res judicata* concerns arising here because the primary dispute in the instant action is

17

one of policy interpretation.

In sum, Ace has failed to meet its burden to demonstrate that the Northern District of Illinois is a more convenient forum. Rather, the Court concludes that the balance of the private and public factors weigh against transfer.

## III.

For the reasons set forth above, Abercrombie's Motion to Strike (ECF No. 21) and Ace's Motion to Transfer Venue (ECF No. 2) are **DENIED**.

**IT IS SO ORDERED.**

Date:  July 23, 2012                          /s/ *Elizabeth A. Preston Deavers*
                                                             Elizabeth A. Preston Deavers
                                                             United States Magistrate Judge