UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ABERCROMBIE & FITCH CO.,

    Plaintiff,

    v.

Civil Action No. 2:11-cv-1114
Judge George C. Smith
Magistrate Judge Elizabeth P. Deavers

ACE EUROPEAN GROUP, LIMITED,

    Defendant.

## OPINION AND ORDER

Plaintiff, Abercrombie & Fitch Company ("Abercrombie"), brings this insurance coverage dispute against Defendant, Ace European Group, Limited ("Ace"). This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, the federal statute governing diversity jurisdiction. The matter is before the Court for consideration of Abercrombie's Motion to File a Supplemental Complaint (ECF No. 25), Ace's Response (ECF No. 26), Abercrombie's Reply (ECF No. 31), Ace's Motion to Strike and Leave to File a Sur-Reply (ECF No. 33), Abercrombie's Memorandum in Opposition (ECF No. 34), and Ace's Reply (ECF No. 36). Abercrombie seeks leave to supplement its complaint to add new claims arising from a newly-filed case against Abercrombie. Ace opposes the motion and seeks to strike portions of Abercrombie's Reply or be granted leave to file a sur-reply. For the reasons that follow, Ace's Motion to Strike or File a Sur-Reply is **DENIED**, and Abercrombie's Motion to File a Supplemental Complaint is **GRANTED**.

1

**I.**

This diversity action arises out of an insurance coverage dispute between Ace and Abercrombie.  Abercrombie is a Delaware corporation with its principal place of business in New Albany, Ohio.  Ace is a foreign company domiciled in the United Kingdom and registered to sell surplus lines insurance policies in Ohio.  In exchange for premiums, Ace issued Abercrombie the Safeonline Advertisers and Internet Liability Policy ("Policy").  Hollister Co. ("Hollister") is a company affiliated with Abercrombie and is a named insured under the Policy.

In 2009, Abercrombie conducted a nationwide Christmas gift card promotion, offering a twenty-five dollar gift card to consumers who purchased a designated amount of merchandise.  According to Abercrombie, the promotional gift cards expired and had their balance voided out on January 30, 2010.  Some of the gift cards issued in connection with the promotion, however, had the words "no expiration date" while others had no printed information regarding an expiration.  (Compl. ¶ 11, ECF No. 4.)

In the summer of 2010, consumers brought two class-action complaints against Abercrombie arising from their inability to utilize the promotional gift cards after January 30, 2010.  The first-filed lawsuit, styled *GS Tiffany Boundas and Dorothy Stojka v. Abercrombie*, Case Number 10-cv-4866 ("Boundas Action"), was filed in a state court in Illinois on June 8, 2010, which was subsequently removed to the Northern District of Illinois.  The second-filed lawsuit, styled *Kerry White v. Abercrombie & Fitch, Hollister, and The Limited*, Case Number BC 444368 ("White Action"), was filed in the Superior Court of the State of California for the County of Los Angeles Central District.

During the Policy period, Abercrombie sought coverage from ACE under the Policy for

the Boundas and White Actions.  Based upon its review of the allegations set forth in the Boundas and White complaints, Ace denied coverage.  On November 28, 2011, Abercrombie filed suit against Ace in the Court of Common Pleas for Franklin County, Ohio.  Ace subsequently removed the action to this Court.  Abercrombie seeks declaratory relief regarding the terms of the policy and asserts state-law breach of contract and bad faith claims arising out of Ace's denial of coverage for the Boundas and White Actions.

On December 14, 2011, a third action arising from Abercrombie's gift card promotion was filed by Beth Seaver against Abercrombie in the Court of Common Pleas for Cuyahoga County, Ohio ("Seaver Action").  On January 5, 2012, Abercrombie tendered the Seaver Action to Ace for coverage.  Ace did not respond.

Abercrombie now seeks leave to supplement its Complaint in order to add its claims against Ace arising from Ace's refusal to provide coverage for the Seaver Action.  In support of its Motion, Abercrombie asserts that leave is proper under Federal Rule of Civil Procedure 15(d).  Ace opposes Abercrombie's Motion, citing futility, prejudice, and undue delay.  In its Reply, Abercrombie responds to each of Ace's arguments.  In addressing Ace's futility argument, in addition to its reliance on the Policy language and case law, Abercrombie attaches an affidavit from the individual who serves as its liaison to its insurers, Nancy Sparrow, in which she recounted communications between herself and an insurance broker regarding coverage for the Seaver Action.  Ace moves the Court to strike the affidavit as well as the other responsive arguments Abercrombie advanced in its Reply or, in the alternative, seeks leave to file a sur-reply.  (ECF No. 33.)  Ace's Motion to Strike is fully briefed.  (ECF Nos. 33, 34, and 36.)

3

**II.**

Abercrombie has moved to supplement its pleadings pursuant to Federal Rule of Civil Procedure 15(d). Motions to supplement are evaluated under the same standard as motions to amend under Rule 15(a). *Spies v. Voinovich*, 48 F. App'x 520, 527 (6th Cir. 2002) (citations omitted); 21 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1504 (3d ed. 2012). Under Rule 15(a)(2), the Court should give leave for a party to amend its pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). Accordingly, when a party decides "to advance a new claim as a result of [] discovery," Rule 15(a) provides for "liberal amendment to the complaint." *Tucker v. Union of Needletrades, Indus. & Textile Emp.*, 407 F.3d 784, 788 (6th Cir. 2005). "Nevertheless, leave to amend 'should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, *or would be futile*.'" *Carson v. U.S. Office of Special Counsel*, 633 F.3d 487, 495 (6th Cir. 2011) (quoting *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995)) (emphasis added). A court may deny a motion for leave to amend for futility if the amendment could not withstand a motion to dismiss. *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010); *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005).

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require

"'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Further, a complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In considering whether this facial plausibility standard is met, a Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citations omitted). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

### III.

**A.     Ace's Motion to Strike or to File a Sur-Reply**

As a threshold matter, Ace's Motion to Strike New Arguments and Factually Incorrect Statements from Plaintiff's Reply Brief and Affidavit Attached to Same Or, in the Alternative, for Leave to File a Sur-Reply is **DENIED**. (ECF No. 33.) In its Motion, Ace takes issue with Abercrombie's reference to representations made by a third party concerning the Policy's

5

coverage of the Seavers Action. Ace also asserts that the Court should strike Abercrombie's argument that the Policy is a "claims made" policy. Finally, Ace posits that the Court should strike Abercrombie's argument concerning Ace's failure to issue a coverage letter regarding the Seaver Action. According to Ace, the Court must strike these arguments because Abercrombie advanced them for the first time in its Reply. Alternatively, Ace seeks leave to file a sur-reply.

As set forth more fully below, the Court has relied only on the plain, unambiguous language of the Policy to resolve Abercrombie's Motion to Supplement. It is, therefore, unnecessary to resolve the parties' arguments considering the admissibility or relevance of Ms. Sparrow's affidavit at this juncture. For this same reason, it is unnecessary to consider the import of Ace's delay in issuing a coverage letter or Abercrombie's characterization of the Policy in its Reply Memorandum.

Likewise, Ace cannot demonstrate that good cause exists to justify filing a sur-reply. In its Memorandum in Opposition to Abercrombie's Motion to Supplement, Ace highlights Policy language that it asserts demonstrates the futility of Abercrombie's proposed Supplemental Complaint. (ECF No. 26.) Abercrombie, in its Reply, simply responds to Ace's arguments, highlighting Policy language that it maintains requires the opposite result. (ECF No. 31.) The Court is well-equipped to review the Policy language and to evaluate whether or not Abercrombie or Ace has mischaracterized the nature of the Policy. *See Bishop v. Children's Ctr. for Dev. Enrichment,* No. 2:08-cv-766, 2011 WL 5506105, at *2 (S.D. Ohio Nov. 10, 2011) ("The Court is in the business of determining whether the litigants before it appropriately relate the facts, the other parties' arguments, and the propositions that are set forth in case law or whether the litigants mischaracterize the facts, arguments, and propositions.") Consequently, the

Court's denial of Ace's request to file a sur-reply does not prejudice Ace.

**B.  Abercrombie's Motion For Leave to Supplement its Complaint**

Ace first submits that the court must deny Abercrombie's proposed supplemental complaint on futility grounds because it relies on conclusory statements to establish its cause of action and also because "the unambiguous terms and conditions of the Policy . . . demonstrate that Abercrombie reported the [Seaver Action] to Ace well <u>after</u> the applicable Policy Period expired."  (Ace's Mem. in Opp. 3–4, ECF No. 26.)  Ace further posits that it would be unduly prejudiced should this Court allow Abercrombie's supplemental pleading.  Finally, Ace cites undue delay as a proper basis for denial.  The Court addresses each of Ace's arguments in turn.

**1.  Futility**

The Court rejects Ace's contention that Abercrombie's proposed Supplemental Complaint would not survive a motion to dismiss because it consists only of threadbare recitals of the elements and conclusory allegations.  Reading Abercrombie's Supplemental Complaint in connection with its original Complaint, the Court concludes that Abercrombie has sufficiently pled facts in support of each element of its breach of contract claim.  "There are four main elements to a breach of contract claim: (a) the existence of a contract; (b) performance by the plaintiff; (c) breach by the defendant; and (d) damage or loss to the plaintiff."  *Thomas v. Publrs. Clearing House*, 29 F. App'x 319, 322 (6th Cir. 2002) (citing *Donor v. Snapp*, 98 Ohio App. 3d 597, 649 (Ohio Ct. App. 1994)).  Here, Abercrombie identifies and attaches the Policy at issue, further alleging that it is valid and enforceable.  It pleads that "[a]ny conditions precedent to coverage under the Policy have been satisfied . . . ."  (Suppl. Compl. ¶ 17, ECF No. 25-1.)  Abercrombie identifies the particular provision of the Policy that it alleges Ace has breached:

7

"ACE promised to pay claims expenses incurred by Abercrombie in connection with 'civil actions for consumer fraud.' . . . To date, ACE has failed to pay Abercrombie's claims expenses associated with the Seaver Lawsuit . . . ." (*Id.* at ¶ 18; Compl. ¶¶ 5 and 32, ECF No. 4.) Finally, Abercrombie alleges that Ace's breach caused it to suffer damages. This is enough. Notably, Ace fails to identify which elements of a breach of contract claim that it believes Abercrombie fails to sufficiently plead.

The Court likewise rejects Ace's second futility argument, that the unambiguous Policy language demonstrates that the Policy's reporting requirements preclude coverage for the Seaver Action. "In Ohio, insurance policies are generally interpreted by applying rules of contract law. If the terms of a policy are clear and unambiguous, the interpretation of the contract is a matter of law." *Spanger v. Wenninger*, No. 1:06-cv-229, 2008 WL 4218580, at *4 (S.D. Ohio Sept. 9, 2008) (citing *Burris v. Grange Mut. Cos.*, 46 Ohio St.3d 84, 88 (1989)). In cases where the terms of an insurance contract are in dispute, Ohio courts apply a "reasonable construction of the contract in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed." *King v. Nationwide Ins. Co.*, 35 Ohio St. 3d 208, 211 (1988) (internal quotation marks and citation omitted). Put simply, the Court must "look for the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 219 (2003) (citation omitted). Policy interpretations tend to favor the insured, as "any reasonable interpretation of an insurance policy that results in coverage for the insured must be adopted." *Univ. of Cincinnati v. Arkwright Mut. Ins. Co.*, 51 F.3d 1277, 1280 (6th Cir. 1995) (citation omitted).

In support of its argument, Ace quotes the following language from the Policy's Introductory Clause:

> THIS IS A CLAIMS FIRST MADE AND NOTIFIED POLICY. THIS POLICY IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AND NOTIFIED TO US DURING THE POLICY PERIOD OR ANY EXTENDED REPORTING PERIOD . . . .

(Ace's Mem. in Opp. 1–2, ECF No. 26 (citing Policy at 5, ECF No. 25-2).)  Noting that the Policy Period is from September 1, 2009, to September 1, 2010, and that Abercrombie did not tender the Seaver Action until January 5, 2012, Ace posits that the foregoing Policy language renders Abercrombie's proposed claims relating to the Seaver Action futile.

Conspicuously absent from Ace's analysis is any mention or discussion concerning the Policy's definition of "Claim" or the Policy's "Notice/Claims Reporting Provisions," both of which unambiguously require the Court to reject Ace's interpretation of the Policy.  (*See* Policy 7, 13–14.)  The Policy defines "Claim" as follows:

> Claim means
>
> > (a) a civil proceeding for damages commenced by the filing of a complaint or similar pleading . . . .
>
> All claims arising out of:
>
> > (a) the same covered event . . . shall be considered a single claim regardless of the number of claims, claimants, defendants, or causes or action.  The date when any such claim is made will be the date that the first claim is made.

(Policy 7, ECF No. 25-2.)  Ace does not dispute that the Boundas and White Actions were "made and notified" during the policy period.  Nor does it dispute that the Seaver Action arises from the same event as the Boundas and White Actions, namely, the gift card promotion.  Thus, the Policy's definition of "Claim" requires that the Court interpret the Seaver, Boundas, and

9

White Actions as a "single claim," which was made when the first of these actions was initiated and notified when Abercrombie tendered the Boundas and White Actions. (*Id.*) This interpretation of the timing of the notification of the Seaver Action is consistent with the Policy's "Notice/Claims Report Provisions." This section of the Policy provides, in relevant part, as follows:

> 2. If during the policy period you first become aware of any circumstance that could reasonably be the basis for a claim you may provide written notice to us through persons named in Item 9 of the Schedule during the policy period of;
>
>    i. The specific details that could reasonably be the basis for a claim;
>    ii. The injury or damage which may result or has resulted from the circumstances; and
>    iii. The facts by which you first became aware of this.
>
>    Any subsequent claim arising out of such circumstance made against you which is the subject of the written notice will be deemed to have been made at the time written notice complying with the above requirements was first given to us.
>
> 3. A claim shall be considered to be notified to us when written notice is first given to us through persons names in Item 9 of the Schedule of the claim or any circumstance, which could reasonably be expected to give rise to a claim if provided in compliance with 2, above.

(Policy 13–14, ECF No. 25-2.) Applying the foregoing Policy language to the instant action, the Seaver Action is "considered to be notified" to Ace when Abercrombie first gave notice to Ace "of the claim [the Boundas and White Actions] or any circumstance, which could reasonably be expected to give rise to a claim [the gift card promotion] if [Abercrombie] provided [the notice] in compliance with 2, above." (*See id.*) Again, Ace does not dispute that Abercrombie complied with the Policy's reporting provisions with regard to reporting the Boundas and White actions, which, like the Seaver Action, arose from Abercrombie's gift card promotion. Thus, under the

Policy, the Seaver action, and "[a]ny subsequent claim arising out of" Abercrombie's gift card promotion, is deemed "first made and notified" during the Policy period.  (*See id.*)

In an attempt to bolster its interpretation of the Policy, Ace posits that to obtain coverage for the Seaver Action, Abercrombie should have purchased the Additional Extended Reporting Period under the Policy, asserting that it "should not suffer the consequences of Abercrombie's decision not to pay for an extended reporting period."  (Ace's Mem. in Opp. 8, ECF No. 26.)  Review of the Policy's "Extended Reporting Provisions" reveals the disingenuousness of Ace's argument.  Contrary to Ace's assertions, the Extended Reporting Period would not have provided coverage for the Seaver Action.  The Policy provides, in pertinent part, as follows:

> In the event of cancellation or non-renewal of this insurance by us, you shall have the right, upon payment of an additional premium in full of the total policy premium, to purchase a 12 month Extended Reporting Period at 100% of the total policy premium *for claims first made against you **and** notified to us during the Extended Reporting Period*, committed on or after the retroactive date and before the end of the policy period, subject to the conditions set forth herein.

(Policy 13, ECF No. 25-2 (emphasis added).)  Thus, to be covered under the Extended Reporting Period, the Seaver action had to be "**first made against [Abercrombie] *and*** notified to [Ace] during the Extended Reporting Period."  (*See id.*)  As set forth above, however, both the Policy's definition of "Claim" and its "Notice/Claims Reporting Provisions" require the conclusion that all claims arising from Abercrombie's gift card promotion were "first made" against Abercrombie during the Policy period.  (*See id.* at 7 and 13–14.)  Notably, Ace does not dispute this critical point.  Thus, the Extended Reporting Period, which explicitly limits coverage to claims "first made" during the Extended Reporting Period, would not provide coverage for any claims arising from Abercrombie's gift card promotion, which the Policy deems "first made" during the Policy period.

11

In sum, Ace has failed to demonstrate that the claims Abercrombie asserts in its proposed Supplemental Complaint are futile. The relevant Policy language is unambiguous and consistent. The Seaver Action, and any subsequent actions arising from Abercrombie's gift card promotion, are considered a single claim "first made" when the Boundas Action was made, notice of which is deemed to have been made at the time Abercrombie properly tendered written notice of the Boundas Action.

### 2. Prejudice and Undue Delay

The Court rejects Ace's unsupported allegations of prejudice and undue delay. Beyond restating its futility argument, Ace offers no evidence of prejudice. The allegations relating to the Seaver Action that Abercrombie advances in its Proposed Supplemental Complaint parallel those made in its Complaint concerning the Boundas and White Actions. Given the infancy of this litigation, the Court cannot discern any prejudice to Ace. Ace asserts that permitting Abercrombie to supplement its complaint "would serve only to delay resolution of the pending motion to transfer," but fails to explain why this is so. (Ace's Mem. in Opp. 9, ECF No. 26.) To the contrary, the Court finds that it would be more efficient for the Court to consider all of the possible related issues and claims in one action. The Court, therefore, concludes that Abercrombie may supplement its Complaint pursuant to Rule 15(d).

### III.

For the reasons set forth above, Ace's Motion to Strike or File a Sur-Reply (ECF No. 33) is **DENIED**, and Abercrombie's Motion to File a Supplemental Complaint (ECF No. 25) is **GRANTED**. Abercrombie did not sign the proposed Supplemental Complaint that it attached to its Motion as Exhibit One. Abercrombe is, therefore, **DIRECTED** to file its Supplemental

Complaint **WITHIN SEVEN DAYS OF THE DATE OF THIS ORDER**.

    **IT IS SO ORDERED.**

Date:   September 19, 2012                                 /s/ *Elizabeth A. Preston Deavers*
                                                                Elizabeth A. Preston Deavers
                                                                United States Magistrate Judge